**STATE of Missouri, Respondent,**

v.

**John REED, Appellant.**

**No. WD 63337.**

Missouri Court of Appeals,
Western District.

March 1, 2005.

Dimitra Y. Massey, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Lacey R. Searfoss, Jefferson City, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

ROBERT G. ULRICH, P.J.

John Reed appeals his convictions for possession of a controlled substance with intent to distribute, section 195.211[1] (class B felony); unlawful use of a weapon, section 571.030 (class D felony); possession of drug paraphernalia, section 195.233 (class

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

A misdemeanor); and driving while revoked, section 302.321 (class A misdemeanor). Following an evidentiary hearing on a Motion to Suppress Physical Evidence, Mr. Reed waived his right to jury trial, and, at his request without the State opposing, the court decided the case based upon the evidence presented during the motion hearing. Mr. Reed was sentenced to eight years in prison for possession of a controlled substance, four years in prison for unlawful use of a weapon, one year in jail for possession of drug paraphernalia, and one year in jail for driving while revoked. All of the sentences were ordered to run concurrently and according to section 559.115. Mr. Reed raises as his sole claim on appeal that the trial court erred in denying his motion to suppress physical evidence because the evidence was obtained through an improper inventory search of the vehicle he was driving when arrested.

The judgment of convictions is affirmed.

### Facts

On October 12, 2003, at approximately 5:00 p.m., Officer Ed Turner of the Independence Police Department was patrolling the area of Logan and Stone in Independence. As Officer Turner approached 901 East Stone, he noticed that the building—a two story detached garage—had several cars parked around it, including a white four-door car parked on the wrong side of the roadway.[2] The sole occupant of the vehicle exited the car, leaving the door open, and approached the building. Officer Turner became suspicious that some sort of drug activity was taking place and parked his car to observe the building.

After a short time, the driver of the white four-door car returned. The driver entered the vehicle and drove it forward, allowing a blue Mercury Cougar to exit. The white car was then driven into the parking space the Mercury had previously occupied, and the blue Mercury was driven away from the residence. Officer Turner followed the Mercury, though he testified that he observed nothing suspicious about the driver.

While following the Mercury, Officer Turner initiated a check of the license plates on the Mercury and was informed that the plates were registered to a 1986 Pontiac. Officer Turner communicated to the driver of the Mercury to stop the vehicle, and the driver drove into the private parking lot of County Court Services in Independence. Officer Turner then approached the driver, Mr. Reed, and asked for his driver's license. Mr. Reed produced a Missouri State Identification Card and informed Officer Turner that he did not have a valid operator's license. Mr. Reed further informed Officer Turner that although he was the owner of the vehicle, the license plates on the vehicle belonged to a friend.

Mr. Reed was arrested when Officer Turner verified that he did not possess a valid driver's license. Officer Turner noted that no lights were on inside the County Court Services facility, and he ordered a police tow of Mr. Reed's vehicle. He then began to search the Mercury. During the search of the passenger compartment of the vehicle, Officer Turner located and collected: (1) six plastic baggies containing a "white powdery crystal substance" hidden inside a plastic "hide-a-key"[3] between the

---

2. Testimony adduced at the motion hearing indicates that Officer Turner had made drug related arrests at the detached garage and at the corresponding residence and had previously served warrants at the 901 E. Stone structure.

3. Officer Turner testified that a "hide-a-key" is a "small container which is used to hold

driver's side seat and door; (2) a glass pipe located between the driver's side bucket seat and the console between the driver's and passenger's seats; (3) a yellow cut straw and a syringe from inside a blue zippered bank bag found in the glove compartment; and (4) two sheathed hunting knives from between the driver's seat and console. The six plastic baggies were marked with numbers, and, following laboratory analysis, the white powdery substance inside the baggies was determined to constitute 3.0455 grams of methamphetamine. The two hunting knives were of different lengths and sheathed together. Officer Turner testified that he measured the blade of the longer knife and found it to exceed four inches.

Officer Turner then searched the trunk of the Mercury and located a latched green toolbox. Officer Turner opened the toolbox and found and collected: (1) zip-lock bags containing a white powder residue; (2) a small white spoon; (3) a purple cut straw; (4) several syringes; (5) prep wipes or alcohol swabs; (6) a butane lighter; (7) two small vials, one containing a "cotton type substance" and the other containing "a clear liquid substance." A green canvas zippered bag was also in the toolbox, and many of the listed items were inside the zippered bag.

Counsel for Mr. Reed filed a Motion to Suppress Physical Evidence on July 28, 2003, and a hearing commenced on the motion the same day. Officer Turner testified. The parties stipulated to certain evidence, and Mr. Reed waived his right to a jury trial. In order to preserve the suppression issue for appeal, Mr. Reed then asked the trial court to make a finding of guilt or innocence based upon the court's ruling on the Motion to Suppress Physical

Evidence. The trial court sustained the motion on September 12, 2003, with respect to the evidence taken from the trunk of the automobile, and overruled the motion with respect to the evidence taken from the passenger compartment of the vehicle. Both rulings were made without further explanation. The trial court then accepted Mr. Reed's waiver of jury trial, and, according to Mr. Reed's motion to determine his guilt or innocence on the basis of the evidence presented at the suppression hearing, found him guilty of possession of a controlled substance with the intent to distribute, unlawful use of a weapon, possession of drug paraphernalia with intent to use, and driving while his operator's license was revoked. Mr. Reed timely filed this appeal.

## Standard of Review

In his sole point on appeal, Mr. Reed contends that the trial court improperly denied his Motion to Suppress Physical Evidence regarding the items collected from the passenger compartment of his car. Ordinarily, denial of a defendant's pretrial motion to suppress evidence is not reviewable because it is interlocutory, not binding on future proceedings, and preserves nothing for appeal. *State v. Wolf,* 91 S.W.3d 636, 642 (Mo.App.2002). Objection to the introduction of the evidence must be made at trial to preserve the issue. *Id.* Where a motion to suppress was overruled and the evidence was introduced at trial, appellate review considers the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted. *State v. Goff,* 129 S.W.3d 857, 861 (Mo. banc 2004). Appellate review of a motion to suppress physical evidence is

keys generally in a concealed area," this particular item contained a magnet on one side and a flip top lid.

limited to determining whether the record as a whole provides sufficient evidence to support the trial court's decision. *State v. Pfleiderer*, 8 S.W.3d 249, 253 (Mo.App. W.D.1999). In this case, by stipulation of the parties, the suppression hearing constituted the trial, and, therefore, the motion to suppress is treated as an objection to the admission of the evidence and is preserved for appellate review.

■ When reviewing a trial court's ruling on a motion to suppress, all facts and reasonable inferences should be stated in the manner most favorable to the order challenged on appeal. *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998). All evidence that contradicts the order should be disregarded. *Id.* A trial court's ruling will not be reversed if the ruling is plausible in light of the record viewed in its entirety. *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). Furthermore, the State bears the burden of producing evidence and the risk of nonpersuasion. *State v. West*, 58 S.W.3d 563, 568 (Mo.App. W.D.2001). While considering the weight of the evidence is within the discretion of the trial court, the "ultimate issue of whether the Fourth Amendment was violated is a question of law, which this court reviews *de novo*." *State v. Pfleiderer*, 8 S.W.3d at 253(quoting *State v. McFall*, 991 S.W.2d 671, 673 (Mo.App. W.D.1999)).

## Analysis

■ Mr. Reed contends that the discovered physical evidence should have been suppressed as the fruits of an improper inventory search. However, the record contains no indication that the trial court relied upon the inventory search as the basis for overruling the motion. The question for this court's review is whether the evidence, acquired without a search warrant, was lawfully acquired, and whether the State presented sufficient evidence to rebut the presumption that it was not. The evidence reflects that Officer Turner stopped Mr. Reed, who was then driving his blue Mercury because the license plates on the vehicle were registered to another vehicle. Officer Turner further testified that upon his inquiry, Mr. Reed admitted that he did not have a valid driver's license. Once he confirmed that Mr. Reed's operator's license had been revoked, Officer Turner arrested Mr. Reed for driving without a valid license. The evidence presented demonstrates sufficient probable cause for Officer Reed to arrest Mr. Reed.

■ Officer Turner further testified that in placing Mr. Reed under arrest, he "checked to make sure he didn't have any weapons on him." Searches incidental to arrest are appropriate even in traffic violations, including driving without a valid driver's license. *See State v. Esquivel*, 987 S.W.2d 481 (Mo.App. W.D.1999). Officer Turner conducted the search of the passenger compartment of the vehicle Mr. Reed had driven after Mr. Reed's arrest, and he found the incriminating items not suppressed. Thus, the issue is whether Officer Tucker's search of the passenger compartment of the blue Mercury was so extensive that it violated provisions of the Fourth and Fourteenth amendments of the United States Constitution.

■ Recognizing that appellate courts had both suppressed and admitted evidence where the acquisition of incriminating evidence resulted from warrantless searches of passenger compartments of vehicles or containers in passenger compartments contemporaneous with the arrest of the vehicle occupants, the Supreme Court in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), expressed the need for a rule applicable in all cases involving similar such facts. The Court said, "When a person cannot know

how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority." *Id.* at 459–60. The exigent concern for an officer's safety when the officer has arrested an individual allows the officer to make certain that no weapons are readily accessible within the area in the defendant's immediate control. *Id.* at 457. The Court expressed the need for a universal "workable," "straightforward rule," where an officer has arrested an occupant of a motor vehicle. Thus, it adopted the "workable rule" that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 459–60.

The Missouri Supreme Court, in its application of *Belton,* recognized that the concern for officer safety is applicable even when the officer has already placed the defendant in handcuffs. *State v. Harvey,* 648 S.W.2d 87, 89 (Mo. banc 1983). The Court adopted a broad interpretation of *Belton* as the intent of the U.S. Supreme Court, concluding that even had the defendant and the other three occupants of the vehicle in *Belton* been handcuffed and placed in the law enforcement officer's patrol vehicle that "the result would have presumably been the same." *Id.*

Since *Belton* and *Harvey,* the United States Supreme Court has extended the rule in *Belton,* and the Missouri Supreme Court's analysis of *Belton* was proven correct. The U.S. Supreme Court, in *Thornton v. U.S.,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), considered whether the rule in *Belton* that permits the search of the passenger compartment of the vehicle a suspect has recently been driving applied not only where the suspect was in the vehicle when first confronted by the law enforcement officer but also where a law enforcement officer first confronted the suspect after the suspect had exited the vehicle. In *Thornton,* the suspect parked and left his vehicle as the law enforcement officer drove his police vehicle in behind the suspect's parked car. 124 S.Ct. at 2129. The law enforcement officer approached the suspect, asked him for his driver's license, and told the suspect that the license tags on the vehicle were not registered to it. *Id.* Ultimately, the law enforcement officer arrested the suspect, searched his person, and found contraband drugs. *Id.* The officer handcuffed the suspect and placed him in the back seat of the police vehicle. *Id.* The officer then searched the suspect's vehicle and found a 9–millimeter handgun under the driver's seat. *Id.* The suspect was charged with possession with intent to distribute cocaine, 21 U.S.C. 841(a)(1); possession of a firearm after having been previously convicted of a crime, 18 U.S.C. 922(g)(1); and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. 924(c)(1). *Id.* The suspect argued that the rule in *Belton* was limited to situations where the law enforcement officer initiated contact with an arrestee while the arrestee was still an occupant in the searched vehicle. *Id.* at 2130. The court noted that:

> Rather than clarifying the constitutional limits of a *Belton* search, petitioner's "contact initiation" rule would obfuscate them. Under petitioner's proposed rule, an officer approaching a suspect who has just alighted from his vehicle would have to determine whether he actually confronted or signaled confrontation with the suspect while he remained in the car, or whether the suspect exited his vehicle unaware of, and for reasons unrelated to, the officer's presence. This determination would be inherently subjective and highly fact specific, and would require precisely the sort of ad

hoc determinations on the part of officers in the field and reviewing courts that *Belton* sought to avoid.

*Id.* at 2132. The court concluded, "So long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest." *Id.*

■ Significant for the case now before this court is the analysis of *Belton* by the Missouri Supreme Court in *Harvey* and by the U.S. Supreme Court in *Thornton.* In *Harvey* and *Thornton*, the Courts determined that even though the defendants had been handcuffed and removed from direct and immediate access to the vehicles that they had recently driven, the searches of the passenger compartment of the vehicles were incident to lawful arrest and valid. Thus, applying the rule in *Belton* as expressed and applied by the U.S. Supreme Court in both *Belton* and *Thornton* and as understood and expressed by the Missouri Supreme Court in *Harvey*, once Mr. Reed was placed in custody, Officer Turner was justified in performing a warrantless search incident to arrest of the passenger compartment of the automobile Mr. Reed had shortly before been driving.

Having found that the record supports the decision of the trial court to overrule Mr. Reed's motion to suppress, the need to address whether the search was a valid inventory search is moot.

The judgment of conviction is affirmed.

SMART and ELLIS, JJ., concur.